UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GAIL A. PEER, as Next Friend of    )
JANE DOE, a minor,                 )
                                   )
                Plaintiff,         )      Case No. 1:05-cv-769
                                   )
v.                                 )      Honorable Joseph G. Scoville
                                   )
JOSHUA D. PORTERFIELD, et al.,     )
                                   )      **<u>OPINION</u>**
                Defendants.        )
_____)

   This is a civil action brought by Gayle A. Peer as Next Friend of her daughter, Jane Doe, a minor.  Plaintiff's complaint asserts a federal claim against the Mesick Consolidated School System (the School District) under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-1688.  Plaintiff also asserts a civil rights claim against the School District under 42 U.S.C. § 1983 and pendent state-law claims arising under Michigan law.  Additionally, the amended complaint names four employees of the School District, asserting the same federal and state claims against them.  Plaintiff's claims arise from an alleged sexual assault upon Jane Doe by a fellow student, Joshua Porterfield.  At the time of the alleged assault, Jane Doe was a kindergartner at the Mesick Elementary School, and Porterfield was an eighth-grader.

   The School District and its employees moved for summary judgment pursuant to Fed. R. Civ. P. 56.  In response to the motion, plaintiff withdrew all claims against defendants Penny Lipar and Kathleen Cooley.  At the summary judgment hearing conducted on December 20, 2006,

plaintiff's counsel withdrew plaintiff's federal claims against the other individual defendants.[1]  On

December 21, 2006, the court entered an order of partial dismissal.  (docket # 64).  Consequently,

the only federal claims that remain pending in this case are the Title IX claim and section 1983 claim

against the School District.

The parties have consented to the dispositive jurisdiction of a magistrate judge

pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (Consent and Order of Reference, docket #

32).  For the reasons set forth below, the court concludes that plaintiff's federal claims against the

School District are completely unsupported.  Summary judgment will therefore be entered on behalf

of the School District as to all federal claims.  In the exercise of its discretion, the court will remand

all state-law claims to the Wexford County Circuit Court, from which this case was removed.

## Findings of Fact

The Mesick Elementary School is a K-through-8 institution operated by the Mesick

Consolidated School System.  On the date of the alleged molestation, April 22, 2004, Joshua

Porterfield was an eighth-grader attending the elementary school.  All eighth-graders were required

to participate in a mandatory enrichment class called "Careers Class," in which students were taught

employment-related skills.  This nine-week long session was taught by the eighth-grade teacher,

defendant Cathleen Traviss, who had developed the course.  Half of the course was devoted to

classroom instruction in career-related skills, such as how to write a resume or proper conduct at a

job interview.  The other four-and-a-half week period was called the "Apprentice Session," in which

---

[1] Plaintiff has asserted state-law claims against the alleged perpetrator of the sexual assault, Joshua Porterfield, and his parents, Judy and James Porterfield.  On December 23, 2005, the Clerk of the Court entered a default as to those defendants.  (docket # 9).

each eighth-grade student spent time in another classroom "working" for a teacher, although not for a salary. The only written statement describing the careers class is attached to plaintiff's brief (docket # 59) as Exhibit 5. This one-page class description describes the eighth-grade student's role in the second half of the course as "completing a teacher assistant apprenticeship." (*Id.*). It is undisputed that all eighth-graders were required to participate in this class regardless of their academic record and without any type of screening for suitability.

In the second week of April 2004, Joshua Porterfield was assigned to the kindergarten class for the apprenticeship session of his "Careers Class" experience. The kindergarten was taught by defendant Melissa Ford. A paraprofessional teacher's aide, defendant Penny Lipar, assisted in the kindergarten room for certain periods of the day. Porterfield was assigned to the kindergarten classroom for a single class period of 45-to-55 minutes per day, Monday through Thursday. Before Porterfield was assigned to the kindergarten class, Ms. Ford had never heard of him and knew nothing about him. Ms. Lipar recognized Porterfield from seeing him around the school but knew nothing about him.

At the time of the alleged assault of plaintiff's minor, Porterfield had been assigned to the kindergarten class for less than two weeks. On the day in question, Thursday, April 22, 2004, Penny Lipar saw Jane Doe running out of the bathroom, crying. After the child regained her composure, she told Ms. Lipar that she was afraid of Josh, pointing to defendant Joshua Porterfield. Ms. Ford, who had been out of the room briefly to make copies, returned and was told by Ms. Lipar that something had happened. After comforting the child, Ms. Ford was able to elicit from Jane Doe that Porterfield had taken her into the bathroom, made her pull down her underwear, and touched her in the "privates." (Plf. Ex. 12 at 1). Ms. Ford took the child to the office of defendant Kathleen

-3-

Cooley, the school counselor, who elicited the same information from her.  Porterfield was sent immediately to the office of the school principal, Linda Salling, who suspended him.  Porterfield was never allowed back on school property.  The school expelled Porterfield about two weeks later.  The school permanently discontinued the apprenticeship aspect of the Careers Class.

After returning to the kindergarten classroom, Ms. Ford began to question other girls with whom she had seen Porterfield in the last two days.  Ms. Ford's questioning uncovered allegations that Porterfield had sexually molested other kindergartners or had tried to do so. Subsequent investigation by the sheriff's department led to allegations from six kindergarten girls, in addition to Jane Doe, of actual or attempted sexual contact by Porterfield on April 19, 20, or 22, 2004.[2]

It is undisputed that no agent or employee of the School District knew of this series of assaults until Ms. Lipar and Ms. Ford talked to Jane Doe at about 1:15 p.m. on April 22, 2004. Each of the other alleged sexual assaults took place before that time, and they were uncovered only as a result of follow-up by Ms. Ford or the police after Jane Doe was assaulted.  In fact, there is no evidence that any similar incident had ever happened before in the Mesick School District.  (*See* Ronald Ford Dep. at 39-40, docket # 49, Ex. B).

---

[2] The record does not contain any firsthand evidence to support a finding that Porterfield actually assaulted Jane Doe or any other kindergarten girl.  The only evidence presented to the court consists of police reports and contemporaneous reports by school employees, which would be admissible, at most, to show that the girls said that the assaults occurred.  Joshua Porterfield was charged in the state juvenile court with multiple counts of first-degree criminal sexual conduct, but was allowed to plead guilty to a single count of fourth-degree criminal sexual conduct, a high misdemeanor.  For purposes of the summary judgment motion, however, the court will assume that plaintiff would be able to prove that Jane Doe and the other kindergartners were sexually assaulted by Porterfield as alleged in the complaint.

The record is devoid of any admissible evidence that might establish a previous incident of sexual misconduct by Joshua Porterfield or even a tendency or proclivity for such conduct.  There is third-hand hearsay evidence regarding an alleged assault, of unknown nature, committed by Joshua Porterfield in August 2003 against a girl named Elissa H., in the house of someone's grandparents.  (Wagatha Dep. at 13-14, docket # 59, Ex. 2).  The record does not disclose the nature of the alleged assault and, as indicated, no admissible evidence has been tendered to show that the assault even occurred.  Whatever the nature of the assault, however, it is clear that no school employee heard of the assault until after the attack on Jane Doe.  Discovery in this case has established only that Jennifer Wagatha, the school secretary, learned of the incident after April 22, 2004:

> Q:     All right.  So you had absolutely no idea before April of 2004 that Josh Porterfield could be a danger to young girls?
>
> A:     No; no.

(Wagatha Dep. at 16).

Plaintiff has argued that other facts should have put the School District on notice of Porterfield's propensities.  They are:

- *Porterfield had a well-documented history of poor academic performance.*  (Plf. Brief at 4).  It is not disputed that Porterfield was a poor student.

- *Porterfield had a well-documented history of disciplinary problems.*  (Plf. Brief at 4).  At the time of the summary judgment hearing, there was no admissible evidence to support this assertion.  The only evidence cited was an evaluation report submitted to the juvenile court under date October 26, 2004, by Frank Langler, a limited license

-5-

psychologist, at the direction of that court. Mr. Langler's report recited that Joshua Porterfield was disciplined by the school on October 3, November 23, 2003, and January 14 and January 21, 2004. (Plf. Ex. 3 at 2). The report is, of course, inadmissible hearsay and not competent to establish the fact of these prior disciplines. The report did not indicate the nature of the discipline or whether any of the incidents remotely involved sexual misconduct. At page 5 of the same report, Mr. Langler indicated that during the previous year, Porterfield had been involved in "an incident that apparently involved hitting and kicking a girl." Again, this is hearsay and is not admissible to prove the fact of the occurrence. Even assuming the occurrence took place, however, the report does not state or imply that there was any sexual component.[3]

Plaintiff initiated this action in the Wexford County Circuit Court on October 20, 2005, alleging both federal and state causes of action. By notice of removal filed November 15, 2005, defendants removed the matter to this court. Default was entered as to Joshua Porterfield and his parents (docket # 9). After the remaining defendants answered, plaintiff filed an amended complaint (docket # 12). The amended complaint alleged as a fact that Joshua Porterfield had sexually assaulted another young girl in the year 2003, and that the defendants knew it. (Am. Compl., ¶ 13). Discovery closed on October 1, 2006, and all defendants other than the defaulted

---

[3] If the Langler report (Plf. Ex. 3) were admissible, the bulk of its findings would undermine, not support, a conclusion that Porterfield's conduct was somehow foreseeable. Langler expressed skepticism that "anybody could have committed the criminal sexual conduct of which Joshua stood accused" (*Id.* at 1), and noted a number of indications suggesting that Joshua was an unlikely sex offender: no serious previous trouble, no previous complaints by other children, a lack of history of abuse or molestation suffered by Joshua, and no history of school discipline until seventh grade. Young people with his MMPI-A profiles "are rarely in trouble for misconduct." (*Id.* at 3).

Porterfields moved for summary judgment. (docket # 50). Plaintiff filed a response to the motion (docket # 57) and supporting brief (docket # 59). Plaintiff did not assert that the record was incomplete or that further information was required to allow a meaningful response to the dispositive motion. Significantly, plaintiff did not file a Rule 56(f) affidavit or seek to reopen the discovery period. At the December 20, 2006 hearing, however, plaintiff's counsel asserted for the first time that plaintiff had been unable to procure the school disciplinary records for Joshua Porterfield, which might disclose the nature of the conduct leading to his four previous disciplines in 2003 and 2004. Under questioning from the court, counsel said that a subpoena had been issued only that morning to Mr. Langler in an effort to procure the original school records upon which Langler based his report.[4] Over defendants' objection, the court kept the record open for a two-week period, to allow plaintiff one last opportunity to procure Porterfield's school records, even though plaintiff had not invoked the appropriate procedure under Rule 56(f).

On January 3, 2007, plaintiff filed a supplement to the record (docket # 65) and attached documents which are represented by plaintiff's counsel as School District records regarding Joshua Porterfield. None of plaintiff's newly proffered documents establish a prior incident of sexual misconduct or even a tendency or proclivity for such conduct. Joshua Porterfield's grades (docket # 65, Ex. 8) do nothing to assist plaintiff in meeting plaintiff's burden of proof. These records now show that the four "disciplinary actions" alluded to in Langler's report obviously did not involve misconduct of a sexual nature by Porterfield. On October 3, 2003, Joshua Porterfield was referred to the middle school office after a third incident of being tardy for band class. (*Id.*, Ex.

---

[4] Plaintiff's counsel also indicated that the records were no longer available from the defendant School District, as the records had followed Porterfield from school to school thereafter.

4).  He received "bus misconduct reports" on two occasions: (1) November 12, 2003, for not keeping

a bounce ball in his backpack (*Id.* Ex. 1); and (2) January 14, 2004, for leaving his assigned seat,

arguing with the bus driver, and "flipping off" the driver after being dropped off at his bus stop (*Id.*,

Exs. 2, 3).  On January 21, 2004, Joshua Porterfield was referred to the office for "bullying" after

he and another band student argued over a chair, and in "retaliation" for the other student's actions,

Joshua hit and kicked her.  (*Id.*, Exs. 5, 6).  Finally, on March 1, 2004, Porterfield was referred to

the office for a minor "level 1" incident of "inappropriate behavior" in band class.  (*Id.*, Ex. 7).

Although the "comments" portion of this document is illegible, it is patent that the incident did not

involve any type of inappropriate sexual contact, as the box for "Sexual Assault/Misconduct" was

not checked.  (*Id.*).

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no issues as

to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.

2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The court does not make

factual findings.  Rather, the standard for determining whether summary judgment is appropriate is

"whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law.'"  *Terry v. LaGrois*, 354 F.3d 527,

530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see*

*Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005); *Martingale LLC v. Louisville*,

361 F.3d 297, 301 (6th Cir.), *cert. denied*, 125 S. Ct. 453 (2004).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendants show that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## Discussion

Plaintiff has alleged two separate bases of liability against the School District. The first claim arises under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. The second claim is for violation of Jane Doe's civil rights under 42 U.S.C. § 1983. The court will analyze each claim separately.

I.      **Title IX Claim**

      A.      <u>Governing Principles</u>

      Plaintiff's first federal claim arises under Title IX of the Education Amendments of

1972. The relevant portion of Title IX provides, with certain exceptions not at issue here, as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

20 U.S.C. § 1681(a). Title IX expressly provides only administrative enforcement mechanisms,

pursuant to which federal agencies are empowered to enforce the statute's nondiscrimination

provisions through any means authorized by law, including ultimately the termination of federal

funding. 20 U.S.C. § 1682. In a series of controlling decisions, however, the Supreme Court has

both recognized an implied right of action under Title IX and established its contours. The Court

held in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), that Title IX is enforceable through

an implied private cause of action. In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60

(1992), the Court held that monetary damages are available for violation of Title IX. *Franklin*

involved allegations that school administrators knew about a teacher's sexual harassment of a student

but took no action. In affirming the viability of a private cause of action for damages, the Court was

careful to limit such claims to cases in which "intentional discrimination is alleged." 503 U.S. at 74-

75.

      The Court defined the contours of a school district's liability for sexual harassment

of a student by a teacher in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998).

In *Gebser*, the Court held that it would frustrate the purposes of Title IX to permit a damage recovery

against a school district for a teacher's sexual harassment based upon principles of *respondeat*

*superior* or constructive notice.  524 U.S. at 285.  The Court pointed out that Title IX is in essence a contract between the federal government and the recipient of funds, "conditioning an offer of federal funding on a promise by the recipient not to discriminate."  *Id.* at 286.  Because the nondiscrimination provisions of Title IX represent an exercise of the spending power of Congress, the Court determined that greater scrutiny is required before holding the recipient of federal funds liable for noncompliance with the condition.  *Id.* at 287.  Consequently, the Court's "central concern" was to insure that "'the receiving entity of federal funds [has] notice that it will be liable for a monetary award.'"  *Id.* at 287 (quoting *Franklin*, 503 U.S. at 74).  For these reasons, the Court pointedly rejected any theory of liability that would allow recovery and damages solely on the basis of vicarious liability or constructive notice.  In short, *Gebser* rejects liability under Title IX based upon what a school district "should have known."  524 U.S. at 283.

Instead, the Court turned to the express remedial scheme under Title IX, which is predicated upon notice to an "appropriate person" and an opportunity to rectify any violation.  20 U.S.C. § 1682.  On this basis, the Court held that "a damages remedy will not lie under Title IX unless an official who at minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of the discrimination in the recipient's programs and fails adequately to respond."  524 U.S. at 290 (emphasis added).  Furthermore, the Court held that the response "must amount to deliberate indifference to discrimination."  *Id*.  The Court explained that any lower standard, such as one based upon negligence, would create "a risk that the recipient would be liable in damages not for its own official decision but instead for its employee's independent actions."  *Id.* at 290-91.

-11-

The Supreme Court first faced the potential liability of a school district for student-on-student sexual harassment in *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999). The Court reviewed its precedents in the area, and reaffirmed that "a recipient of federal funds may be liable in damages under Title IX only for its own misconduct."  526 U.S. at 640.  The Court further reiterated that liability must be based upon intentional conduct and therefore rejected the use of agency principles to impute liability to the district for the misconduct of its employees. Summarizing its previous holding in *Gebser*, the Court remarked as follows:  "Likewise, we declined the invitation to impose liability under what amounted to a negligence standard -- holding the district liable for its failure to react to teacher-student harassment of which it knew or *should have* known." *Id.* at 642 (citing *Gebser*, 524 U.S. at 283).  Liability, therefore, arises only from "'an official decision by the recipient not to remedy the violation.'"  *Id.* (quoting *Gebser*, 524 U.S. at 290).

Turning to the question of student-on-student sexual harassment, the Court held that the misconduct identified in *Gebser* -- deliberate indifference to known acts of harassment -- can amount to an intentional violation of Title IX "in certain limited circumstances."  *Id.* at 643.  The Court addressed the proper definition of the term "discrimination" in the context of student-on-student harassment, concluding as follows:

> Rather, a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities.

526 U.S. at 651.  The Court therefore limited private damage actions to cases "having a systemic effect on educational programs or activities."  *Id.* at 653.  The Court remarked that student-on-student harassment would rarely meet this standard.  *Id.*

-12-

The Supreme Court's jurisprudence in this area may be summarized as follows.  To survive a motion for summary judgment in a Title IX action based upon student-on-student acts of sexual harassment, the plaintiff must raise a triable issue of fact on the following propositions:

- First, the existence of student conduct that is so severe, pervasive and objectively offensive, and so undermines and detracts from the plaintiff's educational experience, that the plaintiff has been effectively denied equal access to an institution's resources and opportunities.

- Second, actual knowledge of the discrimination by an "appropriate person," that is, a school official who must at a minimum have authority to address alleged discrimination and institute corrective measures.

- Third, the school district's failure to respond adequately in such a way that the response amounted to deliberate indifference, which causes the student to undergo harassment or makes her vulnerable to it.

*Davis*, 526 U.S. at 644-51; *see Vance v. Spenser County Pub. Sch. Dist.*, 231 F.3d 253, 258 (6th Cir. 2000).  Upon review of the evidence of record, I conclude that plaintiff has failed to raise a triable issue in support of any of the three foregoing propositions.

### B.   Severe, Pervasive, and Objectively Offensive Sexual Harassment

The record contains no evidence of any conduct, by Joshua Porterfield or any other student, before April 19, 2004, remotely satisfying the Supreme Court's requirement that a "severe, pervasive, and objectively offensive situation" exist.  The record does not disclose that Joshua Porterfield was involved in sexual harassment of Jane Doe or any other student before that time.

-13-

Certainly, previous acts of sexual harassment need not be directed at the plaintiff in order to satisfy the first element of a Title IX claim. *See Doe v. School Admin. Dist. No. 19*, 66 F. Supp. 2d 57, 63 (D. Me. 1999) (actual notice of a teacher's past sexual abuse of other students sufficient). Plaintiff has not shown, however, that Porterfield ever molested anyone before the series of events in April 2004. Plaintiff's attempt to point to Porterfield's poor academic record and his previous incidents of misconduct that led to school discipline (none of which were of a sexual nature) cannot possibly qualify as "severe, pervasive, and objectively offensive sexual harassment." *Cf. McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 468 (6th Cir. 2006) (school district not put on notice of potential for criminal activity by student's previous history of discipline).

Certainly, Porterfield's course of conduct from April 19 through April 22, if it could be proved, satisfies the first element of a Title IX claim. However, plaintiff cannot show that a single school employee knew of or even suspected Porterfield's conduct before 1:15 p.m. on April 22, 2004, when Ms. Lipar saw Jane Doe crying.

In essence, plaintiff argues that the School District should have been aware of the general potentiality for abuse of kindergartners by eighth graders, especially in light of the school's failure to screen the eighth graders or train them appropriately for their apprentice positions. This is plainly insufficient. Title IX is not satisfied by proof that school officials should have been aware of a potential for student-on-student harassment. *See Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001). Rather, "actual knowledge" is required. *Davis*, 526 U.S. at 642. "We have followed the Supreme Court's lead, as we must, in requiring actual knowledge of student-on-student sexual harassment in Title IX cases." *Winzer v. School Dist. for the City of Pontiac*, 105 Fed. App'x 679, 681 (6th Cir. 2004). At a minimum, this requires that "an appropriate official has actual knowledge

of a substantial risk of abuse to students based on prior complaints by other students." *Johnson v. Galen Health Inst., Inc.*, 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003); *accord Escue v. No. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006). In the present case, there was no record of complaints by any student of sexual harassment by anyone, including Porterfield.

The evidence in this case falls far short of that considered by appellate courts as sufficiently severe and pervasive to put school officials on notice of student-on-student sexual harassment. In the seminal case of *Davis v. Monroe County Board of Education*, for example, the plaintiff's minor daughter was the subject of "a prolonged pattern of sexual harassment" by one of her fifth-grade male classmates, who engaged in sexually suggestive behavior, including attempting to touch the girl's breasts and genital area, rubbing against the girl, and making vulgar statements. 526 U.S. at 633. The harassment of plaintiff's child "continued for many months," despite the parents' complaints to teachers and assurances by the school principal. *Id.* at 634. School authorities took no disciplinary action, even though they were aware that the same boy was harassing other female students. The Supreme Court held that these allegations were sufficient to state a claim under Title IX and reversed the district court's dismissal of the complaint under Fed. R. Civ. P. 12(b)(6). Similarly, in *Vance v. Spencer*, 231 F.2d 253 (6th Cir. 2000), the Sixth Circuit upheld a jury verdict for plaintiff under Title IX where the evidence showed that a female student was repeatedly propositioned, groped and threatened, despite letters sent by her mother to the school administration. A fellow student told the girl in front of a class that he had a crush on her and that he could touch her "in any way he wanted and no one was going to do anything about it." 231 F.3d at 257. Afterward, the boy did indeed touch the girl in a sexually assaultive manner and requested sexual favors several times in the presence of a teacher. The court noted that plaintiffs had presented

-15-

several other incidents satisfying the severity and pervasiveness requirements, including one incident in which plaintiffs' minor was stabbed in the hand and another during which two male students held her while others yanked off her shirt, pulled her hair, and attempted to disrobe. *Id.* at 258; *see also Murrell v. School Dist. No. 1, Denver, Colo.*, 186 F.3d 1238 (10th Cir. 1999) (reversing Rule 12(b)(6) dismissal where mother alleged that school officials had actual knowledge of repeated sexual assault of her daughter by a fellow student and yet decided to remain idle).

A plaintiff is not required to prove that she was the victim of a previous sexual assault in order to prevail in a Title IX case. The previous conduct, however, must be so severe, pervasive and offensive as to put a school district on notice of a substantial danger of student-on-student harassment. This court concludes that the evidence, construed in a light most favorable to plaintiff, is insufficient to establish the existence of known acts of student-on-student harassment predating the April 2004 assaults that was so severe, pervasive and objectively offensive such that the School District should have been on notice that Joshua Porterfield presented a threat of sexual assault to female students. *See Winzer*, 105 Fed. App'x at 682 ("Lacking evidence that defendants were deliberately indifferent to *known acts* of student-on-student sexual harassment, [plaintiff] cannot show that defendants 'subjected' Jane to the alleged rape.") (emphasis added).

C.    Actual Knowledge of Discrimination by an Appropriate Person

Plaintiff's attempt to hold the School District liable for Joshua Porterfield's behavior on April 22, 2004, fails on a second and independent ground. A plaintiff bears the burden of showing not only the existence of a serious threat of sexual assault but also actual knowledge of that threat by "an appropriate person." As noted above, the Supreme Court's opinion in *Gebser* rejected

-16-

use of principles of *respondeat superior* or vicarious liability for imposing liability on a school district under Title IX. *Gebser*, 524 U.S. at 285. Rather, the Court in *Gebser* held that a damage remedy will not lie under Title IX unless an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school district's] behalf has actual knowledge of discrimination. . . ." *Id.* at 290. In applying *Gebser*, the appellate courts have required actual knowledge by the school board itself, the school superintendent, or, at least, a school principal. *See, e.g., Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1371 (11th Cir. 2000); *Vance*, 231 F.3d at 258 (principal); *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (principal). Courts have held, however, that nonsupervisory personnel are not "appropriate persons" under the statute, because they do not have authority to terminate or suspend the offending individual. For example, in *Nelson v. Lancaster Independent School District No. 356*, No. CIV-00-2079, 2002 WL 246755 (D. Minn. Feb. 15, 2002), the court found that school bus drivers, teachers, and custodians were not "appropriate persons," because they did not have the requisite authority to take corrective action under *Gebser*. "In cases since *Gebser*, courts have strictly interpreted this element, requiring that the official in question be capable of terminating or suspending the individual." *Id.* at * 5; *accord Baynard v. Lawson*, 112 F. Supp. 2d 524, 533-34 (E.D. Va. 2000) (jury verdict overturned on basis that school principal was not an appropriate person, because Virginia state law did not authorize her to transfer or suspend offending teachers).

In the present case, this court assumes that the school principal, Ms. Salling, would be an appropriate person under section 1682, as she apparently had the authority to at least suspend an offending student and actually did so in this case. MICH. COMP. LAWS § 380.1311(1). With regard to the school conduct of Joshua Porterfield occurring before April 2004, including the prior

disciplinary proceedings, plaintiff can demonstrate that the principal knew of or had access to the school records documenting Porterfield's poor academic and disciplinary performance.  However, as the court has found in the previous section, these facts were plainly insufficient to place any school official on notice that Porterfield posed a threat of sexual assault to female students.  Plaintiff has adduced absolutely no evidence that the school principal or any other "appropriate person" knew of any inappropriate sexual conduct by Porterfield predating April 22, 2004, or even a propensity or potentiality for such conduct.  This is a fatal deficiency in plaintiff's ability to withstand a motion for summary judgment.[5]  In the absence of evidence that an "appropriate person" had actual knowledge of student-on-student harassment before April 22, 2004, plaintiff's Title IX claim fails.

D.    Adequacy of School District Response

The Supreme Court has held that Title IX imposes upon a school district a duty not to display deliberate indifference to acts of student-on-student sexual harassment, of which they have actual knowledge, that is severe, pervasive, and objectively offensive.  *Davis*, 526 U.S. at 650.  As found above, no employee of the School District (let alone an appropriate supervisory official) had any knowledge of any act of sexual harassment by Joshua Porterfield preceding the assault on Jane Doe on April 22, 2004.  Although officials had reason to know of Porterfield's poor grades and general discipline problems, these facts did not portend any serious risk of sexual assault.

---

[5] As noted in the Statement of Facts, the only hint in the record of prior sexual misconduct by Porterfield is a rumor that he assaulted Elissa H. in August of 2003 away from school property. The only school employee to even acknowledge the existence of the rumor was Mrs. Wagatha, the school secretary, and she only heard the rumor after April 2004.  Regardless of when Wagatha learned of the rumor, the school secretary is clearly not an "appropriate person" for purposes of Title IX.

Furthermore, the School District was not deliberately indifferent to Porterfield's conduct, once it came to light. The School District is guilty of deliberate indifference only when its response is "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 649. In the present case, Melissa Ford immediately removed Porterfield from the kindergarten class and brought him to the office of the principal, who suspended him on the spot. Porterfield never returned to the school, and he was expelled within two weeks. The record shows that school officials called the police immediately. (*See* Wexford County Sheriff Report dated 4/22/04 at 2:00 p.m, Plf. Ex. 1). It is difficult to conceive a more forceful and appropriate response by school officials.

In essence, plaintiff's Title IX claim against the School District is for negligence. Plaintiff argues that a careful school district would have screened eighth-grade students and trained and supervised them more closely before putting them in a "position of authority" over other students. It is unclear on the present record whether screening, training, or more supervision would have prevented this incident, but the answer to that question is irrelevant. Title IX liability cannot be based on negligence or upon what a school district "should have known." *Davis*, 526 U.S. at 642; *Gebser*, 524 U.S. at 283. Liability only arises when an appropriate person has actual knowledge of sexual harassment and refuses to remedy it. No reasonable jury viewing the record now before the court could find liability against the School District under this standard. The court will therefore grant the School District a summary judgment on the Title IX claim.

## II.    Section 1983 Claim

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that municipalities may not be held liable in a section 1983 action on a *respondeat superior*

theory for the actions of their subordinates.  436 U.S. at 691.  Rather, the municipality is only

responsible when, through its own deliberate content, the municipality was the "moving force"

behind the injury alleged.  *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397,

404 (1997).  Plaintiff argues that the School District is liable under these principles on two separate

grounds.  First, plaintiff asserts that the School District's "Careers Class policy" was the moving

force behind Jane Doe's constitutional deprivation. Alternatively, plaintiff argues that the School

District failed to protect Jane Doe from a state-created danger.  Neither argument withstands

scrutiny.

A.      Official Policy or Custom

Liability may be found against a municipality under section 1983 when its employees

have acted pursuant to an official policy or custom.  *Monell*, 436 U.S. at 694-95; *see Graham ex rel.*

*Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004).  "Locating a 'policy' ensures that

a municipality is held liable only for those deprivations resulting from the decisions of its duly

constituted legislative body or those officials whose acts may fairly be said to be those of the

municipality.  Similarly, an act performed pursuant to a 'custom' that has not been formally

approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory

that the relevant practice is so widespread as to have the force of law."  *Brown*, 520 U.S. at 403-04

(citations omitted).  "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly

attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate*

conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must

show that the municipal action was taken with the requisite degree of culpability and must

-20-

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* at 404. "There must be a direct causal link between the policy and the alleged constitutional violation such that the County's 'deliberate conduct' can be deemed the 'moving force' behind the violation. These stringent standards are necessary to avoid *de facto respondeat superior* liability explicitly prohibited by *Monell*." *Graham*, 358 F.3d at 383 (citations omitted). "A plaintiff asserting a § 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [School District] itself and show that the particular injury was incurred because of execution of that policy." *Graham*, 358 F.3d at 383.

Invoking this doctrine, plaintiff asserts that the School District's "Careers Class policy" was responsible for the constitutional violation alleged in this case. Plaintiff asserts that the School District had a policy of requiring all eighth graders to complete the Careers Class, including the apprenticeship session, regardless of the student's grades, background, or disciplinary record. "This meant that even the students with the worst grades and disciplinary records were placed in supervisory positions in other classrooms, ranging from kindergarten to 8th grade." (Plf. Brief at 26, docket # 59). Plaintiff further asserts that part of the policy was not to check into the student's background or suitability, not to train them, and to supervise them inadequately.

It is doubtful that plaintiff can establish the existence of such a policy for the Mesick School District. Not everything done by a municipal employee rises to the level of official policy. Rather, policy or custom arises from the acts of lawmakers or "those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. The clearest case for government liability under *Monell* is the *Monell* case itself, in which the government agencies had officially adopted a policy requiring pregnant employees to take unpaid maternity leave before medically

necessary.  436 U.S. at 661.  In subsequent decisions, the Court recognized that policy can arise both from legislation and from executive decisionmakers.  *See Pembauer v. Cincinnati*, 475 U.S. 469, 480-81 (1986).  The Court has made clear, however, that "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." *Id.* at 481.  "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* at 481.

In the present case, the record does not disclose that the "Careers Class" was driven by official School District policy.  The evidence indicates that the requirement that elementary schools offer every eighth-grader a career preparedness class stems from the curriculum directives of the State Board of Education.  (Traviss Dep. at 24, docket # 59, Ex. 4).  The record does not establish, however, whether the details of the particular program implemented by Ms. Traviss were known to the school board, let alone approved by the board or any other policymaking authority. (*See id.* at 43-44).  Thus, the record does not establish whether the details of the program regarding screening and supervision arose from some School District policy or the individual decisions of a particular teacher.  The only clear statement in the record is that Ms. Traviss, the eighth-grade teacher, modeled the apprenticeship program from a workshop she attended and that she decided not to screen students for suitability.  (Traviss Dep. at 51-55).  The decision whether a particular official has final policymaking authority is a question of state law for the court, not a jury, to decide. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).  Michigan's Revised School Code empowers the school board of a general powers school district with the authority to establish all rules. MICH. COMP. LAWS § 380.11a.  No evidence in the record shows a delegation by the board to any other person.  That leaves only the possibility that Ms. Traviss herself was a policymaking official.

Although the courts have struggled with the question of whose "edicts or acts," beyond those of official lawmakers, may be considered the policy of the municipality, *see, e.g., Adkinson v. Bd. of Educ. of Magnoffin County*, 982 F.2d 952 (6th Cir. 1993), it is crystal clear that elementary school teachers do not qualify. *Id.* at 959 (superintendent of schools not "final decisionmaker" for employment decisions).

Of course, *Monell* allows the imposition of government liability not only on the basis of formally adopted policy, but also when conduct reflects "practices of state officials so permanent and well-settled as to constitute a 'custom or usage' with the force of law." 436 U.S. at 691. Although the record establishes that the Careers Class was offered for at least seven years, it does not establish whether the screening and supervision policies of which plaintiff now complains were uniformly followed during that period, let alone that they were so "permanent and well settled" as to have the force of law. Suffice it to say that plaintiff has failed in her burden to establish that the "policy" undergirding the Careers Class reflected anything more than the professional choices of an individual teacher entrusted with teaching the class.

Assuming for the sake of argument that the Careers Class "policy" consisted of the components that plaintiff has identified, and further assuming that the policy was adopted or acquiesced in by an appropriate policy maker, plaintiff's claim falters on a second ground. Plaintiff concedes that the policy was facially constitutional. (Plf. Brief at 26, docket # 59). The Supreme Court has held that a plaintiff "seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with 'deliberate indifference' as to known or obvious consequences." *Brown*, 520 U.S. at 407. Deliberate indifference is an extremely high standard. The Supreme Court

-23-

has authoritatively held that a person is not guilty of deliberate indifference unless he "knows of and disregards an excessive risk" to health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* Under *Farmer*, deliberate indifference is tantamount to criminal recklessness -- disregarding of risk of harm of which a person is actually aware. *Id.* at 837. Although *Farmer* was decided in the context of the Eighth Amendment, the Sixth Circuit has held in a case involving school district liability that section 1983 embodies the same "deliberate indifference" standard as enunciated by the Supreme Court in *Farmer*. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005). In the context of a school district's liability for sexual abuse of students, the Sixth Circuit has held as follows: "'Deliberate indifference' in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

The Sixth Circuit has noted that the liability of a school district under Title IX for sexual abuse of students and liability under section 1983 are "comparable." *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001). This is because liability under both statutes requires a finding of deliberate indifference by the entity, and deliberate indifference can only arise from previous knowledge of sexual harassment and a deliberate decision not to address it. In the present case, no reasonable jury could find that the Mesick School Board was deliberately indifferent to previous acts of sexual harassment, or even to an obvious threat of such conduct, or that its deliberate indifference led to the unfortunate and criminal conduct giving rise to the present lawsuit. As noted in the previous section, the record is devoid of any evidence of sexual harassment by Joshua

Porterfield or any other student preceding the series of events in April 2004.  A jury could not

reasonably conclude that the School District was aware of facts from which the inference of danger

to kindergartners could be drawn or that any responsible employee, from the kindergarten teacher

on up, had actually drawn the inference.  *See Farmer*, 511 U.S. at 837.  Again, plaintiff's entire

argument is based on concepts of negligence law and the assertion that the exercise of more care in

choosing and supervising eighth graders could have prevented this incident.  Plaintiff's assertions

of negligence, however, fall far short of establishing the deliberate indifference necessary to hold the

School District responsible in this case.  *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 468-69

(6th Cir. 2006) (previous knowledge of student's disciplinary problems did not put school on notice

of potential for criminal assault).

        In this regard, the holding of the Supreme Court in *Board of Commissioners v. Brown*

is dispositive.  *Brown* was a section 1983 action in which plaintiff sought to recover for injuries

sustained when she was forcibly removed from her automobile by a sheriff's deputy during a traffic

stop.  Plaintiff sought to hold the county liable for the sheriff's single decision to hire the deputy after

an inadequate background check.  In that regard, plaintiff's theory of municipal liability in *Brown*

was analogous to the theory advanced by plaintiff in the present case, as plaintiff here also alleges

a policy arising from inadequate screening.  The *Brown* Court held that plaintiff's injury was not

attributable to any custom or policy of the municipality, because of the lack of proof of deliberate

indifference.  The Court's comments in this regard apply with equal force to the present case:

> Cases involving constitutional injuries allegedly traceable to an ill-considered
> hiring decision pose the greatest risk that a municipality will be held liable for an
> injury that it did not cause.  In the broadest sense, every injury is traceable to a hiring
> decision.  Where a court fails to adhere to rigorous requirements of culpability and
> causation, municipal liability collapses into *respondeat superior* liability.  As we

recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights. A failure to apply stringent culpability and causation requirements raises serious federalism concerns, in that it risks constitutionalizing particular hiring requirements that States have themselves elected not to impose. Cf. *Canton v. Harris*, 489 U.S. at 893, 109 S.Ct., at 1206. Bryan County is not liable for Sheriff Moore's isolated decision to hire Burns without adequate screening, because respondent has not demonstrated that his decision reflected a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right.

520 U.S. at 415-16. As in *Brown*, plaintiff here has not demonstrated that the decision to allow Joshua Porterfield to act as a student apprentice in the kindergarten room "reflected a conscious disregard for a high risk" that Porterfield would sexually molest a kindergartner. On the present record, the School District was not on notice of any risk of such conduct. In these circumstances, plaintiff has failed to establish a jury-submissible claim of municipal liability against the School District.

### B.     State-Created Danger

Plaintiff's alternative theory is that the School District failed to protect Jane Doe from a state-created danger of sexual molestation. (Plf. Brief at 28). The invocation of the "state-created danger" doctrine is unavailing to plaintiff in the present case and creates no independent ground for liability, for the reasons set forth below.

In *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), a majority of the Supreme Court held that nothing in the Due Process Clause creates an affirmative duty on the part of the state to "protect the life, liberty and property of its citizens against invasion by private actors." 489 U.S. at 195. The *DeShaney* Court, and subsequent decisions, recognized two principal exceptions to this rule. The first is when the victim of the offense is in the

actual or constructive custody of the state.  *See, e.g., Stemler v. City of Florence*, 126 F.3d 856, 867-68 (6th Cir. 1997).  Alternatively, an affirmative duty to protect may arise where the state's affirmative acts either create or increase the risk of private violence.  *See, e.g., Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998).  Plaintiff in the present case invokes the second exception to *DeShaney*, sometimes called the "state-created danger" exception, in an effort to impose liability on the School District for the alleged criminal act of Joshua Porterfield.

        The only effect of a finding of state-created danger is the recognition of a duty upon the municipality, when one might not otherwise exist under *DeShaney*.  In the present case, however, the school board clearly had a duty to Jane Doe and all other students.  *See Doe*, 103 F.3d at 510.  That duty, to the extent imposed by federal law, arises from both Title IX and the Fourteenth Amendment.  As noted above, a school district violates that duty when it is deliberately indifferent to a known risk of sexual assault against its pupils.  Consequently, the invocation of the state-created danger doctrine, which merely recognizes the existence of a duty, avails plaintiff nothing in the present case.  Even if the court were to adopt plaintiff's argument that Jane Doe was subjected to a state-created danger, plaintiff would still be required to show that the School District was guilty of an abuse of executive power that "shocks the conscience."  *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002).  This extremely high standard of liability requires intentional conduct or, at the very least, a showing of deliberate indifference.  *Id.* at 510-11.  The Court of Appeals therefore applies the very same standard, derived from *Farmer v. Brennan*, to judge municipal liability under a state-created danger theory -- subjective recklessness, under which plaintiff must show "that the state 'official knows of and disregards an excessive risk to [the victim's] health or safety.'" *Ewolski*, 287 F.3d at 513 (quoting *Farmer*, 511 U.S. at 837); *accord McQueen v. Beecher Cmty. Sch.*, 433

F.3d 460, 468-69 (6th Cir. 2006) (*Farmer*'s deliberate indifference standard applies to Fourteenth Amendment claim of state-created danger).  As the court has already found, no reasonable jury could ever conclude that the School District, or any employee thereof, was guilty of deliberate indifference to a serious risk of sexual assault in the circumstances of this case.  Consequently, invocation of the "state-created" danger exception avails plaintiff nothing, because, like the other theories of liability, it requires a showing of deliberate indifference, which plaintiff cannot sustain on the record.

In summary, plaintiff cannot establish that any employee of the School District was on actual notice of previous sexual harassment, or even the clear potentiality for such criminal conduct, before the events of April 2004.  In the absence of such evidence, a finding that the School District was deliberately indifferent -- that is, reckless -- cannot be sustained on the present record.  In the absence of evidence of deliberate indifference, the School District cannot be held liable under Title IX or under section 1983 under any theory advanced by plaintiff.  The assault on plaintiff's minor, although criminal and extremely damaging to the young victim, cannot give rise to liability against the School District under the controlling decisions of the Supreme Court and the Sixth Circuit.  Therefore, the School District is entitled to summary judgment on all federal claims.

III.    **State-Law Claims**

Plaintiff's remaining claims arise under the law of the State of Michigan.  Where, as here, all federal claims are dismissed, the court has discretion to dismiss the state claims without prejudice.  *See* 28 U.S.C. § 1367(c)(3); *see May v. Franklin County Comm'rs*, 437 F.3d 579, 586 (6th Cir. 2006); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000).  In normal circumstances, dismissal is the appropriate disposition of such state claims.  *See Moon v.*

*Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006); *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 586 (6th Cir. 2005). In the present case, dismissal is even more appropriate, as the state claims appear to raise novel issues of Michigan law, best adjudicated in the first instance by the state courts. 28 U.S.C. § 1367(c)(1). Plaintiff's claims under the law of Michigan will therefore be dismissed without prejudice.


Dated:   January 8, 2007                          /s/  Joseph G. Scoville
                                                   United States Magistrate Judge